# About Life Sentences for the Sexually Dangerous and Related Issues

STATEHOUSE WITNESS
DRAFT ONLY
10/14/92

On September 24, 1992, the Massachusetts Legislature's Joint Committee on Criminal Justice met to hear testimony regarding House Bill 5902 filed by Governor William Weld and to hear testimony on Senate Bill 1678 filed by Senator Edward Kirby. The Governor's Bill is described in the Legislation as "An Act increasing the penalty for first and subsequent convictions of sex offenses". Senator Kirby's Bill would authorize civil commitment of persons convicted of sex crimes and judged to be sexually dangerous - for an indeterminate period of "a minimum of one day to a maximum of such person's natural life". The following is an attempt to present a fairly selected interpretive summary of that hearing.

At 1:30PM House Committee Chair Joseph McIntyre told those present that in order to utilize time efficiently, testimony would be taken until Lt. Governor Paul Cellucci arrived at 2PM to officially present the Governor's Bill. He specified that whoever was testifying at that time might be asked to interrupt their testimony until after Cellucci had spoken.

### Ben Shapiro and John Corbett

Ben Shapiro identified himself as the Executive Director of the Massachusetts District Attorney's Association. He reported that the Association is in full support of H5902 and affirmed that passage of the Bill would go a long way toward protecting the public from sexually dangerous people. He introduced John Corbett (Assistant District Attorney, Plymouth County) who reported that he was present as a representative of Plymouth County District Attorney William O'Malley.

Corbett told the Committee that because the Bridgewater Treatment Center is located in Plymouth County that County has learned the hard way about the tragic consequences that occur when repeat sexual offenders are released. Corbett cited four cases of men who, very shortly after being released (as cured or 'no longer sexually dangerous beyond a reasonable doubt'), had committed heinous sexual crimes and affirmed that many other similar examples could be cited.

Corbett expressed his approval of the recent repeal of law that allowed judges to sentence sexual offenders to treatment centers instead of to prison. He affirmed that such repeal was correct because sexually dangerous behavior should not be thought of as 'a disease' (for which one goes to a hospital) and should be thought of as criminal behavior (for which one goes to prison). He emphasized his sense that it is time to increase our willingness to apprehend, punish, and incapacitate criminals. He affirmed that a proper way to do that would be to realize as a society that anyone who has committed repeated heinous acts on other human beings has forfeited their right to ever again live within our society.

## Lori Bouwens

Lori Bouwens introduced herself as President of the New England Sexual Abuse Victims Assistance Program. She affirmed that the time has come to concern ourselves less with the welfare of perpetrators of sexual crimes and to concern ourselves more with the victims of such crimes.

Bouwens affirmed that because such crimes so often involve one person's word against another, sentences are seldom long. She also affirmed that inappropriate attitudes by the public and the police and others often influence whether criminal charges are actually pressed and often negatively affect victim willingness to participate in prosecuting such crimes.

Bouwens affirmed that what we call sexual crimes are not sexual and that such crimes are crimes of violence and control in which the motivation is to humiliate and degrade. She indicated her sense that caring more for those violated by such crimes is properly expressed by the life sentences asked for by H5902 and she confirmed her organizations endorsement of the bill. Bouwens also reported that a very high proportion of sexual crimes are committed by habitual offenders and asserted that therefore life sentences would be very effective in reducing a large percentage of that kind of crime.

## Paul Cellucci

After being introduced as the Lt. Governor of Massachusetts and as an official representative of the Weld Administration in regard to H5902... Paul Cellucci characterized H5902 as a 'critical proposal' that would have a very great impact on the government's ability to significantly deter violent sexual crimes.

Cellucci reported that the bill provides for mandatory life imprisonment, without the possibility of parole, for all persons convicted of any second offense of serious sexual crime. Cellucci reported that H5902 also would give Judges the option to impose life sentences on first time offenders. He affirmed that passage of H5902 would guarantee that no member of the public is ever again raped, murdered or otherwise victimized by anyone who has been previously convicted of more than one sexual offense.

Cellucci acknowledged that no future law changes the reality that countless victims have already suffered brutal sexual assaults committed by perpetrators who have been allowed back into society after multiple previous convictions. He affirmed that it is outrageous that there is no mechanism in current state law to keep criminals who rape and murder behind bars for the rest of their life.

Cellucci indicated that the Weld administration understands that there are many civilly committed sex offenders and many sex offenders in prison who will eventually be released under current statutes (new laws will not apply to them). He emphasized that the Weld Administration accepts responsibility for dealing with that reality. He specified that in regard to such people the Weld Administration is expanding relapse prevention programs for sex offenders while in prison and is imposing tough parole conditions on sex offenders.

Cellucci concluded his prepared testimony by affirming that government officials owe it to the people of Massachusetts to do whatever they can to protect them in the future - and affirmed that the best protection is to "keep habitual sex offenders, where they belong, behind bars".

After specifying that he agrees that dangerous sexual offenders should be sent to prison for a very long time... House Committee Chair Joseph McIntyre (New Bedford) affirmed that government also has the clear obligation to protect society by trying to prevent former victims of abuse from becoming abusive (many studies indicate that many victims become abusers). Cellucci agreed that top priority should be given to prevention efforts and indicated that study of the matter was a priority for the Administration and acknowledged that he wasn't sure of the present status of

2.

such study. He explained that the development of recommendations for abuse prevention provisions in the Family Bill was a cause of delay in that bills progress and indicated that therefore such recommendations were expected soon. He pledged to check into the matter more closely.

McIntyre expressed his sense that more 'bricks and mortar' will be needed to house increasing prison population and observed that sufficient resources therefore had to be made available and he pledged willingness to work with the Administration in that regard. McIntyre also affirmed that 'alternative sentencing' methods can be beneficial in prevention of future crime and in easing prison crowding. Cellucci communicated that the Administration was not against alternative sentencing and cited recent Administration openings of 'work camps' for juvenile offenders. He characterized the work camps as quite effective in teaching the value of discipline and hard work. Cellucci also cited the Administration's success in bringing 4,000 new beds into the prison system and cited other capital improvements that have been recently undertaken in the Massachusetts correction system.

# Robert Cordy

Robert Cordy (Chief Legal Counsel to the Governor) referred to recent law that has ended the practice of sending some convicted sex offenders to treatment centers instead of to prison (Senator Kirby's bill would reinstate similar law with significantly more stringent release requirements). He reported that such law was passed in 1957 because it was meant to make it possible for the state to keep in custody those who might still be sexually dangerous after a jail sentence had been completed (and would confine some who could not be successfully prosecuted). Cordy affirmed that in actual practice the law had not accomplished such purposes. He affirmed that the law instead results in the release of sexually dangerous people because the state is often unable to prove 'beyond a reasonable doubt' that such people are still dangerous. He indicated that all it takes to legally constitute a reasonable doubt in such civil matter is the testimony of one expert witness and later expressed his sense that it seems easier these days to find people who will provide such testimony.

Cordy characterized the repeal of treatment center sentencing as successfully 'locking the front door'. He indicated that locking the back door will require that prison sentences for sexual offenses be lengthened. He reemphasized that passage of H5902 would result in no second offender ever being allowed back on the streets to victimize anyone again.

Senate Criminal Justice Committee Chair Paul Harold (Quincy) asked Cordy if such harsh sentences might result in juries acquitting offenders more frequently. He wondered whether reasonable doubt might be found more often especially in cases when there was no confirming physical evidence and no witness except the victim. Cordy acknowledged it was hard to say if such acquittals would increase and noted that juries are not supposed to know whether a defendant has a prior criminal record and he affirmed that he did not think inappropriate acquittals would happen very often. He also indicated his sense that, in any case, it is proper to require sentences that 'fit the crime'

House Chair McIntyre asked whether Cordy thought Judges in Massachusetts are presently using maximum sentences appropriately. He reported that he had heard that many Judges often feel frustrated by the limited range of sentencing options available. He observed that Judges already have statutory authority to issue life sentences in some circumstances in which they do not use it. and asked why they are not issuing those sentences. He indicated that he wanted to know the reasoning behind Judges not issuing life sentences and wondered if it is possible that the Judges might "know something we don't know". McIntyre also asked whether Cordy and Cellucci thought Judges were failing.

Cordy indicated that he would not use the word 'failure' and affirmed that he didn't believe that Judges were usually frustrated by sentencing limitations even though there are individual cases in which they are frustrated. He affirmed that sometimes such frustration involves cases in which a

3.

3

severe enough penalty is not available and cited violent assaults without use of physical weapons as an example. Cordy, Cellucci, and others during the course of the hearing, indicated their sense that they do believe that Judges too often give sentences that are inappropriately lenient.

## Edward Kirby

Note: Edward Kirby's testimony took place before Paul Cellucci arrived for his scheduled 2PM appearance. His testimony is presented out of order to simplify presentation.

Senator Edward Kirby (Plymouth and Barnstable) was introduced as being present to testify on behalf of S1678 which he had filed. After affirming his general agreement with the Governor's proposed legislation (H5902), Kirby expressed his sense that it had been a mistake to remove provision of civil commitment for sexually dangerous people (the same repeal of legislation referred to by Robert Cordy). Kirby affirmed that civil commitment sentences of 'one day to life' give the government an effective extra tool for dealing with sexually dangerous people. He acknowledged that such law should not be used for everyone and affirmed that such law would be useful for some important specific cases. He indicated that civil commitments can be issued at the same time as criminal commitments - resulting in the ability of the State to send an offender to a treatment center and keep them there after their prison sentences would have otherwise expired (if they are still sexually dangerous). Kirby affirmed that such concurrent civil commitment might also be utilized effectively in regard to first time offenders (who may properly be given less than lifetime criminal sentences). Kirby affirmed that treatment for some individuals may really help and communicated that the civil commitment laws have never been found unconstitutional.

Kirby told the Committee that the problem with Massachusetts civil commitment law before it was repealed was that release of sexually dangerous individuals was required unless the state could prove beyond a reasonable doubt that such person was still dangerous. Kirby indicated that S1678 requires that no one can be released until it is beyond reasonable doubt that such person is no longer sexually dangerous.

## Paula Ericson

Paula Ericson identified herself as formerly employed at the Bridgewater Treatment Center for sexually dangerous people. She communicated that she is in support of Senator Kirby's bill.

Ericson asserted that when she had worked at the treatment center she had witnessed consistent graft and corruption. She affirmed her sense that in general, guards at the treatment center come from the least effective in the penal system because no one wants to work with rapists and because problem guards are 'shunted' to what is considered a lower level in the corrections system. She reported that she had witnessed effective treatment staff being systematically replaced by corrupt and ineffective staff and affirmed her sense that such replacement has been motivated by corrupt management seeking to protect itself. She indicated her sense that it is not surprising that rehabilitation has not worked very well in Massachusetts since those in charge of the system do not really try to rehabilitate people.

Ericson affirmed that good staff can effectively treat sexually dangerous people. She expressed her sense that 50% can be helped to the point that with careful and consistent monitoring and aftercare, there will be only a very low likelihood of a re-offense. Representative Robert Krekorian (Reading) expressed his sense that 50% clearly was not enough. Ericson responded by affirming that good clinicians will not often make a mistake about who should be released. She emphasized that the treatment facility presently is holding many sexually dangerous people (one for 35 years) and therefore has proven itself to provide valuable public protection by confining some sexually dangerous people who would have otherwise been released. Ericson expressed her sense that a recent brutal killing would not have occurred if sensible clinicians had been listened to as called for by S1678.

4.

Ericson was questioned quite extensively by Committee Members Harold, McIntyre, Kirby, and Krekorian. She asserted that sentences of life imprisonment cannot be given indefinitely since there are not enough dollars. She urged the Committee to therefore consider appropriate guidelines and administration for the treatment center because it is a necessary facility. She recommended that open admission to the treatment center be made available for those who want to commit themselves and affirmed that many men will volunteer if the program is a good one (open admission is a provision of S1678). She affirmed that prisoners will receive necessary treatment in a treatment center that they will not agree to receiving while in prison (in fear that such therapy will identify them as sexual offenders to the other prisoners).

Ericson explained that the treatment facility will probably need to remain open for many years even if S1678 does not pass. She specified that around 70 patients remain at the treatment center who cannot be released because they remain dangerous and who cannot be transferred to prison because future law will not apply to them.

In response to a question from Senator Kirby, Ericson asserted that the present treatment center will only improve when corrupt staff are indicted and when more good corrections officers are placed there, and when ~~better consent decrees are available~~ [when consent decrees are upheld] (legal agreements between patients and the State about treatment). She reported that such consent decrees have not been properly used for years.

When several members of the committee advised her to take her concerns to the Governor and/or the Attorney General, Ericson specified that she had been frustrated by attempts to get others to consider her concerns seriously and had finally gone to the Governor. She reported that she believes the Governor is taking effective steps to deal with the problem at the treatment center and expressed her gratitude to him for his efforts.

After brief additional testimony and after confirming that no one else in the room wished to testify, Chair McIntyre closed the hearing.

*when consent decrees are upheld*

5